Shiva Shirazi Davoudian, Bar No. 232771
sdavoudian@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, California  90067.3107
Telephone:  310.553.0308
Fax No.:    310.553.5583

Attorneys for Defendant
UTILITY TREE SERVICE, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE CHAVEZ, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>             Plaintiff,<br><br>      v.<br><br>UTILITY TREE SERVICE, LLC, a Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>             Defendants. | Case No.  5:23-cv-00154<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>**[28 U.S.C. §§ 1332, 1441, AND 1446]**<br><br><br><br><br><br>Trial Date:  N/A<br>Complaint filed: September 13, 2022 |

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO PLAINTIFF FELIPE CHAVEZ AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE PLEASE TAKE NOTICE that Defendant UTILITY TREE SERVICE, LLC removes the above-captioned action from the Superior Court of the State of California, County of San Bernardino to the United States District Court, Central District of California, pursuant to 28 U.S.C. sections 1332(d) (Class Action Fairness Act of 2005), 1441(b), and 1446 on the following grounds:

## I.    STATEMENT OF JURISDICTION

1.    The Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. See 28 U.S.C. §1332(d). CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II.    VENUE

2.    This action was filed in the Superior Court for the State of California, County of San Bernardino. Venue properly lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. sections 84(c)(2), 1391, 1441, and 1446.

## III.    PLEADINGS, PROCESS, AND ORDERS

3.    The Superior Court of the State of California, County of San Bernardino's docket for this matter indicates that on September 13, 2022, Plaintiff Felipe Chavez ("Plaintiff") filed a Class Action Complaint against Defendant in San Bernardino County Superior Court, titled: *FELIPE CHAVEZ, individually, and on*

LITTLER MENDELSON,
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

2

*behalf of himself and on behalf of all persons similarly situated, Plaintiff, vs. UTILITY TREE SERVICE, LL, a Limited Liability Company, and DOES 1 through 50, inclusive, Defendants*, bearing Case No. CIVSB2220268 (the "Complaint"). The Complaint asserts the following eight causes of action: (1) Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (2) Failure to Pay Minimum Wages in Violation of Cal. Lab. Code §§ 1194, 1197 and 1197.1; (3) Failure to Pay Overtime Wages in Violation of Cal. Lab. Code § 510; (4) Failure to Provide Required Meal Periods in Violation of Cal. Lab. Code §§ 226.7, 512, and the Applicable IWC Wage Order; (5) Failure to Provide Required Rest Periods in Violation of Cal. Lab. Code § 226.7, 512, and the Applicable IWC Wage Order; (6) Failure to Provide Accurate Itemized Wage Statements in Violation of Cal. Lab. Code § 226; (7) Failure to Reimburse Employees for Required Expenses in Violation of Cal. Lab. Code § 2802); and (8) Failure to Pay Sick Wages in Violation of Cal. Lab. Code §§ 201, 204, 233, 246. The Superior Court of the State of California, County of San Bernardino's docket for this matter also indicates that on the same day, Plaintiff filed a Civil Case Cover Sheet. The Superior Court of the State of California, County of San Bernardino's docket for this matter indicates that on December 15, 2022, the San Bernardino Superior Court Clerk issued a Summons and assigned the action to Department S-26. *See* Declaration of Shiva S. Davoudian ("Davoudian Decl.") In Support of Defendant's Notice of Removal, filed concurrently herewith, ¶¶ 1-2.

4.    The Superior Court of the State of California, County of San Bernardino docket for this matter specifies that on December 21, 2022, the San Bernardino Superior Court Clerk entered an Initial Case Management Conference Order scheduling an Initial Case Management Conference for March 7, 2023 at 9:00 AM in Department S-26 at the San Bernardino County Superior Court. A true and correct copy of the December 21, 2022 Initial Case Management Order is attached as **Exhibit A** to the Davoudian Decl. filed concurrently herewith. Davoudian Decl. ¶ 3, Exh. A.

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

3

5.      On December 30, 2022 Defendant was served with the Complaint, along with copies of the Summons, Civil Case Cover Sheet and Addendum, Notice of Case Assignment, and related documents through Defendant's agent for service of process, CT Corporation System. A true and correct copy of the Complaint, Summons, Civil Case Cover Sheet and Addendum, Notice of Case Assignment and all related documents served upon Defendant is attached as **Exhibit B** to the Davoudian Decl., filed concurrently herewith. *Id*. ¶ 4, Exh. B.

6.      On January 27, 2022, Defendant timely filed its Answer in the Superior Court of the State of California, County of San Bernardino. A true and correct copy of Defendant's Answer is attached as **Exhibit C** to the Davoudian Declaration, filed concurrently herewith. *Id*. ¶ 5, Exh. C.

7.      Pursuant to 28 U.S.C. § 1446(d), **Exhibits A-D** accompanying the Davoudian Declaration, constitute all process, pleadings and orders served on Defendant or filed or received by Defendant in this action. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in the Superior Court of the State of California, County of San Bernardino, or served by any party. Davoudian Decl. ¶¶ 6-7.

## IV.    TIMELINESS OF REMOVAL

8.      An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the Defendant within 30 days of service on defendant of the initial pleading. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint). Removal of this action is timely because this Notice of Removal has been filed within 30 days from December 30, 2022, when Defendant was served with the Complaint. 28 U.S.C. § 1446(b). Davoudian Decl. ¶ 4.

## V.    NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

9.      Contemporaneously with the filing of this Notice of Removal in the

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

4

United States District Court for the Central District of California, the undersigned is providing written notice of such filing to Plaintiff Felipe Chavez' counsel of record: Norman B. Blumenthal, Kyle Nordrehaug, Aparajit Bhowmik, and Nicholas J. DeBlouw of Blumenthal, Nordrehaugh, Bhowmik, DeBlouw, LLP, 2255 Calle Clara, La Jolla, CA 92037. In addition, a copy of Defendant's Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of San Bernardino. Davoudian Decl. ¶ 10.

## VI.    CAFA JURISDICTION

10.    CAFA grants United States district courts original jurisdiction over: (a) civil class action lawsuits filed under federal or state law; (b) where the alleged class is comprised of at least 100 individuals; (c) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (d) where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice of Removal.

### A.    <u>Plaintiff Filed A Class Action Under State Law</u>

11.    Plaintiff filed his action as a class action based on alleged violations of California state law. Davoudian Decl., ¶ 4, Exh. B, Complaint, Prayer for Relief.

### B.    <u>The Proposed Class Contains At Least 100 Members</u>

12.    28 U.S.C. § 1332(d)(5)(B) states that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100."

13.    Plaintiff filed this action on behalf of "all individuals who are or previously were employed by Defendant in California, including any employees staffed with Defendant by a third party in California, and classified as non-exempt employees (the "California Class") at any time during the period beginning four (4)

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

1  years prior to the filing of this Complaint and ending on the date as determined by

2  the Court (the "California Class Period") and on behalf of a subclass defined as "all

3  members of the California Class who are or previously were employed by Defendant

4  in California including any employees staffed with Defendant by a third party in

5  California, and classified as non-exempt employees (the "California Sub-Class") at

6  any time during the period three (3) years prior to the filing of the complaint and

7  ending on the date as determined by the Court (the "California Sub-Class Period")

8  pursuant for Cal. Code of Civ. Proc. § 382." Davoudian Decl., ¶ 4, Exh. B,

9  Complaint, ¶ 4 and 37, respectively.

10      14.    Based on a review of Defendant's records, Defendant employed

11  approximately 1,373 non-exempt employees working from its California locations

12  from October 27, 2018 to the November 19, 2022. Declaration of Cheryl Trago in

13  Support of Defendant's Removal of Civil Action to Federal Court (hereinafter "Trago

14  Decl."), ¶4. Accordingly, Defendant's internal records demonstrate that there are

15  well over 100 putative class members in this case. *Id.*

16      15.    Defendant Is Not A Governmental Entity

17      16.    Under 28 U.S.C. § 1332(d)(5)(A), CAFA does not apply to class actions

18  where "primary defendants are States, State officials, or other governmental entities

19  against whom the district court may be foreclosed from ordering relief."

20      17.    Defendant is a corporation, not a state, state official, or other

21  government entity exempt from CAFA.

22  **C.    There Is Diversity Between At Least One Class Member And One**

23      **Defendant**

24      18.    CAFA's minimal diversity requirement is satisfied, *inter alia*, when

25  "any member of a class of plaintiffs is a citizen of a State different from any

26  defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the

27  citizenship of the named parties is considered for diversity purposes, and not the

28  citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 340 (1969).

LITTLER MENDELSON,
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

6

1    Additionally, for removal purposes, diversity must exist both at the time the action

2    was commenced in state court and at the time of removal. *See Strotek Corp. v. Air*

3    *Trans. Ass'n of Am.*, 300 F.3d 1129, 1130-1131 (9th Cir. 2002). Minimal diversity of

4    citizenship exists here because Plaintiff and Defendant are citizens of different states.

5                    **1.    Plaintiff is a Citizen of California**

6            19.    For diversity purposes, a person is a "citizen" of the state in which he is

7    domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir.

8    1983); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)

9    (confirming that person's domicile is the place he resides with the intention to

10    remain).

11            20.    Plaintiff's Complaint alleges that "Plaintiff has been employed by

12    Defendant in California since November 2021. . ." Davoudian Decl., ¶ 4, Exh. B,

13    Complaint, ¶ 3. According to Defendant's records, Plaintiff used a California address

14    as his location of residence. (Trago Decl., ¶ 7.)

15            21.    In addition, a Finder Report run on Plaintiff confirmed that Plaintiff

16    resided and continues to reside in California. (Davoudian Decl. ¶ 9.) This is evidence

17    of Plaintiff's physical presence and intent to remain in California. *Lew v. Moss*, 797

18    F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable presumption of

19    domicile supporting diversity of citizenship); *see also Smith v. Simmons,* 2008 WL

20    744709 at *7 (E.D. Cal. 2008) (place of residence provides "prima facie" case of

21    domicile). Accordingly, Plaintiff has been and is domiciled in the United States in

22    the State of California and has been and is a citizen of the United States and the State

23    of California as of the date of the filing of his Complaint and the time of this Removal.

24    Plaintiff is therefore a citizen of California for purposes of the instant jurisdictional

25    analysis. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A

26    person's domicile is her permanent home, where he resides with the intention to

27    remain or to which he intends to return.")

28            22.    Defendant has thus established by a preponderance of the evidence that

LITTLER MENDELSON,
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

7

Plaintiff resides and is domiciled in California, and is, thus, a citizen of California. *See Anderson v. Watts*, 138 U.S. 694, 706 ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary.").

### 2.     Defendant Is Not A Citizen of California

23.     Defendant is not a citizen of the State of California. For diversity purposes, a limited liability company's citizenship is determined by examining the citizenship of each of its members. *See Carden v. Arkoma Assocs*., 494 U.S. 185, 195-96 (1990); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens.").

24.     Defendant Utility Tree Service, LLC was, at the time this action was filed and continuing through the time of this removal, a limited liability company organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Willow Grove, Pennsylvania.  Defendant Utility Tree Service, LLC is wholly owned by Utility Vegetation Services, LLC, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Willow Grove, Pennsylvania. Utility Vegetation Services, LLC is wholly owned by Asplundh Tree Expert, LLC ("ATE"), a limited liability company organized under the laws of the Commonwealth of Pennsylvania. ATE has four members, none of which are citizens of California.

25.     The first member of ATE is Asplundh Tree Expert Holding Co., a Pennsylvania corporation with its principal place of business in Willow Grove, Pennsylvania. For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  To determine a corporation's principal place of business, courts apply the "nerve center" test, which deems the principal place of business to be the state in which the corporation's officers direct, control, and coordinate the corporation's activities. *The Hertz Corp. v. Friend*, 130 S.Ct.

LITTLER MENDELSON,
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

8

1181, 1192 (2010). A corporation's principal place of business will typically be where the corporation maintains its headquarters. *Id.* Here, Asplundh Tree Expert Holding Co.'s corporate headquarters, as well as its books and records, are located in Willow Grove, Pennsylvania. The second member of ATE is CLGA, Inc., a Delaware corporation, with its principal place of business in Delaware. The third member of ATE is Gorilla Investor, LLC, a limited liability company organized under the laws of the State of Delaware, which is, in turn, owned by Gorilla Holdco, Inc., Delaware corporation, with its principal place of business in Delaware.

26. The fourth member of ATE is CP Arbor Holdings, L.P., a Delaware partnership. Partnerships are treated as a citizen of each state as to which its members are citizens. The citizenship of a partnership for diversity purposes is determined by examining the citizenship of all of its partners or members. *Lincoln Property Co. v. Roche,* 546 US 81, 84 fn. 1 (2005); *Carden v. Arkoma Associates,* 494 U.S. 185, 189, 192-197 (1990) (for diversity purposes, a partnership entity will meet the complete diversity requirement, if all partners, limited as well as general, are diverse from all parties on the opposing side). All of the stakeholders of CP Arbor Holdings, L.P. are limited partners, all of whom are citizens of Delaware. None of CP Arbor Holdings, L.P.'s partners are domiciled in California.

27. Accordingly, Defendant is a citizen of Pennsylvania and Delaware for purposes of this Court's diversity jurisdiction.

28. The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

29. Accordingly, the named Plaintiff is a citizen of a state (California) different from Defendant (Delaware and Pennsylvania), and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

9

**D.**    **The Amount In Controversy Exceeds $5,000,000[1]**

30.    This Court has jurisdiction under the CAFA, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000.  28 U.S.C. § 1332(d). "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" this amount.  28 U.S.C. § 1332(d)(6).

31.    The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).  The Supreme Court, in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), recognized that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  The defendant's "amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction.  *Id.* at 553.

32.    Here, however, Plaintiff purports to cap the putative class damages at less than $5 million. See Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶¶ 27 and 37. But he does so knowing nothing about the scope of the class he seeks to represent. For instance, Plaintiff does not know the size of the class, the number of workweeks at issue, or the compensation of the putative class members. What's more, because a class action has yet to be certified, Plaintiff lacks standing to limit the potential recovery of the class he seeks to represent. Hence, as conclusively determined by the United States Supreme Court in *Standard Fire Insurance Company v. Knowles*, 133 S. Ct. 1345, 1349 (2013), Plaintiff has no authority to cap damages to avoid federal

---

[1] The alleged damages calculations contained herein are for purposes of removal only. Defendant denies that Plaintiff or the putative class are entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's alleged damages in this case.

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

court jurisdiction at the pre-certification stage where, as here, the evidence demonstrates that the amount in controversy exceeds $5,000,000. ("In sum, the stipulation at issue here can tie Knowles' hands, but it does not resolve the amount-in-controversy question in light of his inability to bind the rest of the class. For this reason, we believe the District Court . . . should have ignored that stipulation." See also *Rea v. Michaels Stores*, 742 F.3d 1234, 1239 (9th Cir. 2014)(when the plaintiffs complaint alleges that the amount in controversy does not exceed $5,000,000, the defendant's notice of removal may refute such a claim.)

33.    Defendant denies the validity and merit of the entirety of Plaintiff's alleged claims, the legal theories upon which they are ostensibly based, and the alleged claims for monetary and other relief that flow therefrom.  For purposes of removal only, however, and without conceding that Plaintiff or the putative class are entitled to any damages or penalties whatsoever, it is readily apparent that the aggregated claims of the putative class establish, by a preponderance of evidence, that the amount in controversy well exceeds the jurisdictional minimum of $5,000,000.  *See Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (the "amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [D]efendant's liability"); see also *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. Cal. 2013) (a defendant "may remove when it discovers, based on its own investigation, that a case is removable.").

34.    For purposes of determining whether a defendant has satisfied the amount in controversy requirement, the Court must presume that the Plaintiff will prevail on his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability.").  The ultimate inquiry is what amount is put "in controversy" by plaintiff's complaint, not what defendant might actually

LITTLER MENDELSON,
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

11

owe. *Rippee v. Boston Mkt. Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005); accord *Ibarra v. Manheim Inv., Inc.* 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the amount in controversy).

35.    Here, Plaintiff seeks to recover damages, penalties, and attorney's fees for alleged failure to pay minimum and overtime wages, failure to provide meal breaks and rest breaks, and the related failure to provide accurate wage statements or pay all wages during and at the separation of employment, failure to pay wages and sick pay at the correct regular rate, failure to reimburse business-related expenses, and violation of California's Unfair Competition Law. Davoudian Decl., ¶ 4, Exh. B, Complaint, Prayer for Relief (seeking damages and/or penalties pursuant to California Labor Code sections 201, 202, 203, 204, 210, 221, 226, 226.2, 226.7, 233, 246, 512, 1194, 1194.2, 1197, and 2802).

36.    More specifically, Plaintiff's Complaint alleges that "Defendant's policy and practice was to unlawfully and intentionally deny timely payment of wages." Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶ 66. Plaintiff alleges that "Defendant inaccurately calculated the correct time worked and consequently underpaid the actual time worked…" *Id.* at 68. Plaintiff alleges that Defendant "failed to provide all the legally required off-duty meal breaks" and "denied [] proper rest periods…" *Id.* at ¶¶ 92 and 96, respectively. Plaintiff also alleges that Defendant failed to provide complete and accurate wage statements. *Id.* at ¶ 101. Further, Plaintiff alleges Defendant is liable for failing to pay wages during employment and at termination, failing to reimburse business expenses, failing to pay sick pay at the correct rate of pay, and engaging in unfair business practices. *Id.*, Prayer for Relief.

37.    Also stemming from his claims for failure to pay unearned wages, meal and rest periods, and premium pay, Plaintiff alleges Defendant is subject to liquidated damages pursuant to Cal. Lab. Code §§ 1194.2 and 1197 and penalties pursuant to

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

12

Cal. Lab. Code §§ 204 and 210. Davoudian Decl., ¶ 4, Exh. B, Complaint, Prayer for Relief.

38.    Moreover, Plaintiff alleges causes of action for a violation of the Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200, et seq. Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶¶ 46-60. Alleging a UCL violation may extend the statute of limitations for Plaintiff's and the putative class's claim for unpaid wages, meal periods, rest breaks, and expense reimbursement from three to four years before the filing of the Complaint. In this case the statute of limitations is extended to September 13, 2018. *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

39.    Based on a review of Defendant's business records, Defendant employed approximately 1,373 hourly, non-exempt employees in California from October 27, 2018 to November 19, 2022. Trago Decl., ¶ 4. The average hourly rate of these employees from October 27, 2018 to November 19, 2022 was $30.30 per hour. *Id.* During the same time period and continuing to the present day, Defendant paid its hourly non-exempt employees on a weekly basis. Trago Decl., ¶ 3.

40.    Based on the available employment records between October 27, 2018 and November 19, 2022, Plaintiff has placed approximately 110,536 workweeks in controversy. Trago Decl., ¶ 4. During the three-year period prior to the filing of the Complaint and up to and including November 19, 2022, 301 putative class members ended their employment with Defendant. Trago Decl., ¶ 5. During the one-year time period between October 27, 2021 up to and including November 19, 2022, 622 putative class members worked 26,768 pay periods. Trago Decl., ¶ 6.

41.    Plaintiff's allegations combined with the conservative calculations set forth below establish that the amount in controversy for (i) failure to pay minimum wage; (ii) failure to pay overtime (iii) meal period premiums; (iv) rest period premiums; (v) inaccurate wage statements; (vi) failure to reimburse business

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

13

expenses; (vii) related penalties pursuant to Cal. Lab. Code §§ 201-204, 210; and (viii) attorneys' fees is at least $**13,310,115**.[2]

### 1.    Amount In Controversy — Minimum Wage Claim

42.    In his Second Cause of Action, Plaintiff alleges that Defendant elected "either through intentional malfeasance or gross nonfeasance, to not pay employees for their labor as a matter of company policy, practice and procedure, and Defendant perpetrated this scheme by refusing to pay…the correct minimum wages for [] time worked." Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶ 72. Plaintiff alleges he and the putative class did not receive all wages allegedly due time worked due to an established company rounding policy that was "*always*" to the benefit of the Defendant, for time spent undergoing mandatory drug testing or examinations, and for time spent undergoing mandatory temperature checks and symptom questionnaires for COVID-19 screening. Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶ 8. (*Emphasis* added.) Further, Plaintiff alleges Defendant "*regularly* failed to pay Plaintiff and other members of the California Class their correct wages…" Id. at ¶ 20. (*Emphasis* added.)

43.    When asserting claims for unpaid minimum wages under California Labor Code section 1194, employees may also recover liquidated damages "in an amount equal to the wages unlawfully unpaid and interest thereon." CAL. LABOR CODE § 1194.2. Plaintiff specifically seeks liquidated damages. Davoudian Decl., ¶ 4, Exh. B, Complaint, Prayer for Relief.

44.    Plaintiff's Complaint does not allege how much time he or the putative class allegedly spent working off-the-clock.  For purposes of establishing the amount in controversy at removal, Defendants need not make Plaintiff's case for him, or prove the amount in controversy to a certainty. Rather, Defendants can rely on "reasonable assumptions" and a "chain of reasoning that includes assumptions"

---

[2] This calculation does not include the time period between September 12, 2018 to October 27, 2018 or the weekly pay periods between November 19, 2022 to the date of filing this instant motion, which would only increase the amount in controversy.

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

based on reasonable grounds to calculate the amount in controversy. *Anderson v. Starbucks Corp.*, 2020 WL 7779015, *8 (N.D. Cal. Dec. 31, 2020); *Herrera v. Carmax Auto Superstores California, LLC*, EDCV-14-776-MWF (VBKx), 2014 WL 12586254, at *6 (C.D. Cal. Jun. 12, 2014) ("Defendant cannot be expected to produce evidence of how often overtime violations may occur. Defendant must be entitled to monetize this claim with a reasonable and conservative estimate.")

45.    There are at least 1,373 putative class members that collectively worked approximately 110,536 workweeks between October 27, 2018 to November 19, 2022. Trago Decl., ¶ 4. The average hourly base rate for non-exempt employees between October 27, 2018 and November 19, 2022 is $30.30. *Id.*

46.    While Defendant denies Plaintiff's allegations or that he or the putative class are entitled to any relief, based on Plaintiff's allegations, including that the alleged rounding practice *always* benefitted the Defendant[3], Defendant conservatively estimated the alleged rounding policy only benefited Defendant in 50% of the workweeks at issue, arguably a neutral rounding policy. Defendant further assumed 15 minutes of unpaid wages per purportedly affected workweek (or approximately 3 minutes per workday based on a 5-day workweek). Accordingly, the amount in controversy for the minimum wage claim could well exceed **$837,310** (55,268 workweeks[4] * .25 hours per workweek * $30.30/hour * 2 (liquidated damages)).

## 2.    Amount In Controversy – Overtime Premiums

47.    In the Third Cause of Action, Plaintiff alleges that Defendant's "unlawful wage and hour practices manifested, without limitation…as a result of implementing a policy and practice that failed to accurately record overtime worked…and denied accurate compensation…for overtime worked." Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶ 81. Plaintiff also alleges that "Plaintiff and the

---

[3] See Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶¶ 8, 11.
[4] 110,536 total workweeks * 50% = 55,268 workweeks

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

California Class Members routinely earned non-discretionary incentive wages" and the Defendant "failed to include incentive compensation as part of the employees' "regular rate of pay" for purposes of calculating overtime pay…" *Id.* at ¶¶ 19 and 10, respectively. Plaintiff alleges he and the putative class worked unpaid "off the clock" for (1) time spent undergoing mandatory drug testing or examination, (2) mandatory temperature checks and symptom questionnaires for COVID-19 screening, and (3) as a result of a company-wide rounding policy that *always* benefited the Defendant. Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶ 8. (*Emphasis* added.)

48.    California Labor Code § 510 requires that employers pay nonexempt employees one-and-one-half times their regular rate for all hours worked over eight in a day or 40 in a week. Additionally, nonexempt employees must be paid one-and-one-half times their regular rate for the first eight hours worked on the seventh day worked in a single workweek. Employers must also pay double time for all hours worked over 12 in a day, and for all hours worked in excess of eight on the seventh consecutive day of work in a single workweek. CAL. LABOR CODE § 510(a).

49.    There are at least 1,373 putative class members that collectively worked approximately 110,536 workweeks between October 27, 2018 to November 19, 2022. Trago Decl., ¶ 4. The average hourly base rate for non-exempt employees between October 27, 2018 and November 19, 2022 is $30.30. *Id.*

50.    The Complaint does not allege how much time Plaintiff or the other putative class members claim to have spent working off the clock. Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief. Based on Plaintiff's allegations, including that the allegedly company-wide rounding policy *always* benefited Defendant,[5] Defendant applied a very conservative estimate of 15 minutes of unpaid overtime wages in 40% of the total workweeks based on average base rate of pay for the putative class. Accordingly, the amount in controversy for

---

[5] See Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶¶ 8, 11.

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

the overtime wage claim could well exceed **$502,382** (44,214 workweeks[6] * .25 hours per workweek * $30.30/hour * 1.5).

51.     Notably, these calculations are based on the average base rate of pay for the putative class. Plaintiff alleged that "Plaintiff and the California Class Members routinely earned non-discretionary incentive wages" and that Defendant "failed to include incentive compensation as part of the employees' "regular rate of pay" for purposes of calculating overtime pay and meal and rest break premium pay." *Id.* at ¶¶ 19 and 10, respectively. Accordingly, applying each putative class member's regular rate of pay would further increase the amount in controversy Plaintiff placed at issue.

### 3.     Amount In Controversy – Meal Period Premiums

52.     In the Third Cause of Action, Plaintiff seeks payments for alleged missed meal periods. Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶¶ 91-94. Plaintiff alleges Defendant "does not have a policy or practice which provided timely off-duty meal and rest breaks to Plaintiff and also fails to compensate Plaintiff for Plaintiff's missed meal and rest breaks." *Id.* at 24. Plaintiff alleges he is typical of the class. *Id.* at ¶ 33. Plaintiff further alleges that, as a result of Defendant's "rigorous work schedule" and rounding policy and practice, Defendant failed to provide off duty meal breaks. *Id.* at 11.

53.     An employee denied meal periods may be entitled to an additional hour's wages per day for failure to provide meal periods and an additional hour's pay per day for failure to provide rest periods, at the regular rate of pay. *Ferra v. Loews Hollywood Hotel, LLC,* 11 Cal. 5th 858 (2021); *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per workday and one rest break violation per workday).

54.     While Defendant denies the validity and merit of Plaintiff's missed meal

---

[6] 110,536 total workweeks * 40% = 44,214 workweeks

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

period claim, for the purposes of removal only, based on a preliminary review of the records, the putative class of 1,373 employees worked 110,536 workweeks during the period from October 27, 2018 to November 19, 2022. Trago Decl., ¶ 4. The average hourly base rate of pay for non-exempt employees during this period is $30.30. *Id*.

55.    Using a very conservative estimate that 50% of the putative class were allegedly not provided 1 non-compliant meal period every two workweeks, and applying the average hourly base rate of pay, the amount in controversy for the meal period claim would be at least **$837,310**. (55,268 workweeks[7] x .5 (1 break every two weeks) x $30.30). Stated differently, Defendant's estimate amounts to a violation rate of approximately 5% of all meal eligible shifts, assuming 5 meal eligible shifts for each workweek Plaintiff placed at issue.

56.    Again, this estimate applies the average base rate of pay for the putative class. Plaintiff alleges that the Defendant routinely failed to include incentive pay in the calculation of the regular rate for the purpose of meal period premiums.[8] Accordingly, applying the regular rate of pay for the putative class would only increase the amount Plaintiff placed in controversy.

#### 4.    Amount In Controversy – Rest Break Premiums

57.    In the Fifth Cause of Action, Plaintiff seeks payments for alleged missed rest breaks. Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶¶ 95-98. Plaintiff alleges Defendant "does not have a policy or practice which provided timely off-duty meal and rest breaks to Plaintiff and also fails to compensate Plaintiff for Plaintiff's missed meal and rest breaks." *Id*. at 24. Plaintiff further alleges that "Defendant's policy restricts Plaintiff and other California Class Member from unconstrained walks and is unlawful based on Defendant's rule which states Plaintiff and other California Class Members cannot leave the work premises during their rest period." *Id*. at 12.

---

[7] 110,536 total workweeks * 50% = 55,268 workweeks
[8] *Id*. at ¶¶ 19 and 10, respectively.

LITTLER MENDELSON,
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

Thus, Plaintiff claims every rest eligible shift is invalid as a result of Defendant's alleged unlawful rule that prevents employees from unconstrained walks or leaving the premises. *Id.*

58. An employee denied rest breaks may be entitled to an additional hour's wages per day for failure to provide meal periods and an additional hour's pay per day for failure to provide rest periods at the regular rate of pay. *Ferra v. Loews Hollywood Hotel, LLC,* 11 Cal. 5th 858 (2021); *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per workday and one rest break violation per workday).

59. At this juncture, every rest break of every putative class member during the putative class period is in controversy as Plaintiff's claims Defendant maintains an unlawful on-premises rest break policy. This cause of action thus dramatically increases the amount in controversy in this case. Nevertheless, if we assume the purported on-premises rest break policy was only enforced 1 day per workweek for approximately 30% of the putative class, the amount in controversy for Plaintiff's rest break claim would be at least **$1,004,778** (33,161 workweeks[9] x 1 day x $30.30).

60. This estimate applies the average base rate of pay for the putative class. Accordingly, the actual amount Plaintiff placed in controversy is likely far greater than the very conservative estimates set forth above.

### 5. Amount In Controversy — Inaccurate Wage Statements

61. In his Sixth Cause of Action, Plaintiff alleges that Defendant "fails to issue Plaintiff an itemized wage statement that lists all of the requirements under California Labor Code 226 et seq." Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶ 101. Plaintiff further alleges that Defendant failed to provide Plaintiff and the other members of the California Labor Sub-Class with complete and accurate wage statements, which failed to show, among other things, the correct gross and net wages

---

[9] 110,536 total workweeks * 30% = 33,161 workweeks

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

earned." *Id.* Plaintiff alleges he and the class members have been injured, and seeks all available statutory penalties, damages, attorneys' fees, and costs of suit. *Id.* at ¶¶ 102 and Prayer for Relief.

62.    Cal. Lab. Code § 226(e) provides for a statutory penalty for violations ofCal. Lab. Code § 226(a)'s wage statement requirements of $50 or actual damages per employee for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of $4,000 per employee. Cal. Lab. Code § 226(a). The statutory period for Labor Code § 226(e) penalties is one year. Cal. C.C.P. § 340.

63.    For purposes of removal, based on a preliminary review of its records, non-exempt employees worked at least 26,768 pay periods[10] in California from the period October 27, 2021 to November 19, 2022. Trago Decl. ¶ 6. Based on Plaintiff's allegations of rounding, meal and rest period violations, off the clock work, including time spent undergoing daily Covid temperature checks and health questionnaires, Plaintiff placed all wage statements at issue during the relevant time period. See Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶¶ 11, 13.  Thus, the amount Plaintiff placed in controversy is **$2,080,000** ($50 for the first pay period, $100 for each additional pay period, and accounting for a $4,000 cap per employee).

**6.    Amount In Controversy — Failure to Indemnify Employees for Expenses**

64.    In his Seventh Cause of Action alleges that "Plaintiff and the California Labor Sub-Class Members were required by Defendant to use their personal cellular phones and personal home offices in order to perform work related job tasks." Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶ 105. Plaintiff alleges he and the Class "regularly paid out-of-pocket for necessary employment related expenses, including, without limitation, for use of personal cell phones." *Id*. at ¶ 21. Plaintiff alleges he and the class members are entitled to reimbursement of expenses plus interest,

---

[10] Defendant pays weekly.

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

20

attorneys' fees and costs of suit. *Id*. at 106.

65.    Defendant denies the merit of Plaintiff's business expense claim. For the purposes of removal only, from the period October 27, 2018 to November 19, 2022, Defendant employed 1,373 non-exempt employees in California, who worked approximately 27,587 months. Trago Decl. ¶ 4. Assuming each of the putative class members incurred $20 per month of cellular phone service or home office expenses for each month of their employment, the amount in controversy for this claim is at least **$551,740** ($20 * 27,587 months with an alleged violation).

### 7.    Amount In Controversy — Waiting Time Penalties

66.    In his Complaint, Plaintiff also seeks waiting time penalties pursuant to Cal. Lab. Code § 203. Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶¶ 20, 42, 74, 90, 110, and Prayer for Relief. Plaintiff contends Defendant failed "to tender full payment and/or restitution of wages owed or in the manner required by California law to the members of the California Labor Sub who have terminated their employment."

67.    The statute of limitations for Plaintiff's Cal. Lab. Code § 203 waiting time penalty claim is three years. *Pineda v. Bank of America*, N.A., 50 Cal. 4th 1382, 1935 (2010) ("no one disputes that when an employee sues to recover both unpaid final wages and the resulting section 203 penalties, the suit is governed by the same three-year limitations period that would apply had the employee sued to recover only the unpaid wages").

68.    Here, there are at least 301 putative class members in California whose employment with Defendant ceased since October 27, 2019.  Plaintiff alleges that Defendant's established company rounding policy "*always*" benefitted Defendant and, therefore, every employee who separated employment is purportedly owed unpaid wages. Thus, assuming an eight-hour workday for the period of October 27, 2019 to November 19, 2022 and the maximum thirty days allowed by statute, the amount in controversy on this claim is approximately $2,188,872 ((8 hours x $30.30)

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

21

x 30 days x 301 terminated employees).  Accordingly, the amount in controversy on Plaintiff's claim for failure to timely pay all waged due at discharge is approximately **$2,188,872**.

**8.    Amount In Controversy — Failure to Timely Pay Earned Wages During Employment**

69.    In his Complaint, Plaintiff alleges that Defendant's aforementioned policies or practices resulted in the failure to pay Plaintiff and the putative class all earned wages within the applicable time frames outlined in Labor Code § 204. Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶¶ 16, 49, and 110.

70.    Labor Code section 210 provides for a statutory penalty for violations of Labor Code section 204 of $100 per employee for the initial pay period in which a violation occurs and $200 per employee for each violation in a subsequent pay period, plus 25 percent of the amount unlawfully withheld.  Cal. Labor Code § 210. The statutory period for Labor Code § 210 penalties is one year.  Cal. Code Civ. Proc. § 340.

71.    Defendant denies the validity and merit of Plaintiff's timely wage payment claim. For purposes of removal only, based on a review of their records, Defendant employed approximately 622 non-exempt employees in California between October 27, 2021 to November 19, 2022. Trago Decl. ¶ 6. These employees worked during approximately 26,768 pay periods.[11]

72.    If each employee incurred an initial violation of $100 (622 employees * $100 = $62,200), and a subsequent violation of $200 for each remaining pay period ($200 * (26,768 – 622) = $5,229,200), the amount in controversy for Labor Code section 210 penalties is approximately $5,291,400.[12]

73.    Standing alone, the amount Plaintiff placed in controversy based on his claim for penalties pursuant to Labor Code §204 is sufficient to establish a basis for

---

[11] Defendant pays California non-exempt employees on a weekly basis. *Id.* at 3.
[12] For ease of calculation, this figure does not include the 25% of any unpaid wages, which would add to the total substantially.

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

Removal without calculating the alleged 25% of the amount unlawfully withheld. However, even if only 50% of the putative class were purportedly harmed by the alleged class-wide rounding policy, meal and rest period violations, and unpaid off the clock work, the amount in controversy is still significant at approximately **$2,645,700.**

### 9.    Amount In Controversy — Attorneys' Fees

74.    Plaintiff seeks attorneys' fees and costs in his Complaint. Davoudian Decl., ¶ 4, Exh. B, Complaint, Prayer for Relief. Plaintiff's Complaint also alleges claims – for example, for the inaccurate wage statements – which allow for the recovery of attorneys' fees. Davoudian Decl., ¶ 4, Exh. B, Complaint, ¶ 64; Cal. Lab. Code § 218.5. It is well-settled that claims for statutory attorneys' fees are to be included in the amount in controversy. *See, e.g.*, *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 549 U.S. 822 (2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

75.    In California, it is not uncommon for an attorneys' fee award to be 25 to 33 percent of a settlement or judgment. *See, e.g.*, *McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1216-1218 (2008); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000).

76.    The attorneys' fees benchmark in the Ninth Circuit is 25 percent. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent."); *Espinosa v. Genesis Healthcare, Inc.*, No. 220CV00688JFWJEMX, 2020 WL 10641865, at *4–5 (C.D. Cal. Mar. 31, 2020) ("In the absence of countervailing evidence from Plaintiff, the preponderance of the evidence supports applying the 25% attorneys' fee benchmark

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

23

for purposes of calculating the amount in controversy in this case.").

77.     Based on Plaintiff's allegations, the amount in controversy for his claims totals **$10,648,092**. However, taking into account attorneys' fees at the benchmark percentage of 25 percent further increases the amount in controversy by **$2,662,023** for a total amount in controversy of **$13,310,115.**

**10.     Amount In Controversy—Plaintiff's Claim for Injunctive Relief**

78.     Finally, the Complaint also seeks injunctive relief to require Defendant to pay all allegedly outstanding wages due to Plaintiff and the putative class. Davoudian Decl., ¶ 4, Exh. B, Complaint, Prayer for Relief. While Defendant has not yet quantified the costs of compliance with any such injunction, this would further increase the amount in controversy. *In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2011), cert granted in part, 534 U.S. 1126, 123 S.Ct. 1063, 151 L.Ed.2d 966 (2002); cert. dismissed, 537 U.S. 1, 123 S.Ct. 584 (2002); see also *Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1161 (C.D. Cal. 2013) (cost of complying with injunction may be aggregated for CAFA purposes).

**VII.   SUMMARY**

79.     Removal of this action is therefore proper as the alleged class is comprised of at least 100 individuals, the parties are diverse, and the aggregate value of Plaintiff's class causes of action for unpaid minimum wages, overtime, meal period and rest break premiums, expense reimbursement, non-compliant wage statements, waiting time penalties, Cal. Labor Code § 204 penalties, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5 million. See 28 U.S.C. § 1332(d)(2):

LITTLER MENDELSON, P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

24

| Plaintiff's Claim | Amount in Controversy |
|---|---|
| Unpaid Minimum Wage | $837,310 |
| Unpaid Overtime | $502,382 |
| Meal Period Premiums | $837,310 |
| Rest Break Premiums | $1,004,778 |
| Inaccurate Wage Statements | $2,080,000.00 |
| Unreimbursed Business Expenses | $551,740 |
| Waiting Time Penalties | $2,188,872 |
| Cal. Lab. Code § 204 | $2,645,700 |
| Attorneys' Fees | $2,662,023 |
| **Amount in Controversy** | **$13,310,115** |

80.     Removal of this action is therefore proper as the aggregate value of Plaintiff's class causes of action for unpaid wages, unpaid meal and rest periods premiums, final wages not timely paid, inaccurate wage statements, unreimbursed business expenses, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5 million.  See 28 U.S.C. § 1332(d)(2).

81.     Defendant provides the foregoing calculations only to demonstrate that the amount placed in controversy by Plaintiff's Complaint easily exceeds the amount in controversy requirement of the CAFA.  Defendant makes no admission of any liability or damages with respect to any aspect of this case, nor does it endorse or concede that the proffered methodology for such calculations for purposes of demonstrating that the jurisdictional minimum is met could be used in lieu of individualized inquiries or otherwise.

82.     WHEREFORE, Defendant hereby removes this action from the Superior Court of the State of California, County of San Bernadino, to the United States District Court for the Central District of California.

LITTLER MENDELSON,
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

25

1

2    Dated:        January 27, 2023

3                                                        LITTLER MENDELSON, P.C.

4
                                                        */s/ Shiva S. Davoudian*
5                                                        Shiva Shirazi Davoudian

6                                                        Attorneys for Defendant
                                                        UTILITY TREE SERVICE, LLC
7

8    4886-7508-1289.1 / 100715-1030

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON,
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

26